Filed 9/17/21  Padlan v. Graves CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALEXIS D. PADLAN,<br><br>      Plaintiff,<br><br>v.<br><br>ZENAIDA P. GRAVES,<br><br>as Trustee, etc.<br><br>      Defendant and Appellant. | A159576<br><br>(San Francisco County<br>Super Ct. No. PTR-16-299858) |

Zenaida P. Graves is the successor trustee of the Blandina D. Padlan Revocable Trust, Dated May 16, 2000 (trust).  She appeals in propria persona from a December 20, 2019 probate court order which, as relevant here, approved a final account, ordered payment of attorney fees, and directed distribution of the estate (Prob. Code, § 17200).[1]

We affirm.

---

[1] Undesignated statutory references are to the Probate Code.  Alexis D. Padlan did not file a respondent's brief.  We have decided the appeal on the record and the opening brief.  (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334.)  We have not considered matters arising in the trial court after Graves filed the notice of appeal.  We use the decedent's first name for convenience, intending no disrespect.

1

## BACKGROUND

We recite only those facts necessary to resolve the issues on appeal, doing so in the light most favorable to the judgment. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 787.)

Blandina had six children, including Graves and Padlan. The children are beneficiaries of the trust. After Blandina's death in 2002, two of her children served as co-trustees. In 2007, Graves became the sole successor trustee. At that point, the sole remaining trust asset was a single-family home located in San Francisco (the property). Graves moved into the property, where she lived rent-free with the consent of the other beneficiaries.

### A.

In 2016, Padlan initiated this litigation by petitioning to, among other things, subject the trust to probate court supervision, authorize the payment of his attorney fees and costs, and compel Graves to provide an accounting. The petition alleged Graves had failed to sell the property and distribute the proceeds to the beneficiaries in dereliction of her duty to administer and distribute the trust. Padlan asked the court to allow his attorney fees and costs as "proper expenses of the administration of the trust" and urged the court to order Graves to provide an accounting.

Graves sold the property in January 2017 and placed the proceeds— $648,308.71—in a trust bank account. Later, pursuant to a court order, Graves posted bond of $650,000. Eventually, the funds were placed in a blocked account.

### B.

In August 2017, Graves hired attorney Trisha Friedeberg to represent the trust. Two months later, Graves filed a petition for settlement of first

and final account, approval of trustee fees and trustee attorney fees, and for final distribution of trust property. Padlan objected. In early 2018, the parties mediated their trust-related disputes and reached a settlement wherein Graves agreed to: waive her trustee fees, pay up to $17,000 to Friedeberg, and pay $15,000 of Padlan's attorney fees from the trust. Later, Graves refused to comply with the settlement agreement and the court declined to enforce it.

Friedeberg withdrew as counsel. Several months later, Friedeberg petitioned for approximately $17,000 in attorney fees. She noted the parties had agreed in mediation that the fees billed by her firm would "be paid . . . in an amount up to $17,000." Friedeberg averred the "actual fees incurred" by her firm exceeded $30,000; she attached itemized billing statements supporting her fee request.

Graves objected to the petition and moved to dismiss it. The court denied the motion. Graves and Friedeberg arbitrated the attorney fee dispute but Graves refused to accept the arbitration award. The court scheduled a hearing date on the attorney fee petition.

## C.

By August 2018, Padlan had incurred "over $25,000 in attorney's fees" in this litigation. He requested the court prohibit Graves from recovering trustee fees due to her self-dealing and her delay in distributing the trust. He also urged the court to order the trust to pay his attorney fees (surcharge motion).

At a hearing on the surcharge motion, the parties submitted on the pleadings. Following the hearing, the court issued a written order partially granting the surcharge motion (March 2019 order). The court granted Padlan's "request to be reimbursed for attorney's fees from the estate" up to

3

$25,000. It also prohibited Graves from recovering trustee fees in addition to those "already paid" because Graves had not submitted "time sheets to support her claim for trustee fees" and because "whatever fees [Graves] would be entitled to are offset by the benefit she received by living in the property for almost 10 years without paying any rent to the other beneficiaries."

Next, the court ruled that "[a]ny claim for outstanding legal fees" Graves incurred "should be borne by her individually as there is no showing that those fees benefitted the estate and [Graves] repudiated the mediation agreement she signed with the assistance of counsel who is pursuing a claim against her for legal fees." Finally, the court ordered Graves to maintain sufficient funds in the trust from her share of the estate to pay those attorney fees.

The court denied Graves's motion to set aside the March 2019 order.

**D.**

In October 2019, Graves—now represented by another attorney—filed a petition for settlement of second and final account, approval of report of administration of trust, closure of blocked account, approval of trustee fees and trustee attorney fees, and final distribution of trust property (petition for approval of second and final account). Among other things, Graves urged the court to deny Padlan's request for attorney fees.

Padlan objected, noting the March 2019 order had, "for all intents and purposes[,] ended this case." Padlan explained that the court had already approved his request for attorney fees of up to $25,000. Padlan asked the court to release $25,000 from the blocked account for his attorney fees and to distribute the remainder of the trust assets to the beneficiaries.

4

In December 2019, the court held a combined hearing on the petition for approval of second and final account and Friedeberg's attorney fee petition. The hearing was not reported. A few days later—on December 20, 2019—the court issued a written order on the petition (December 2019 order). As relevant here, the court authorized the withdrawal of funds from the blocked account to pay Friedeberg's fees and costs. It also authorized the distribution of assets from the blocked account to the beneficiaries in equal amounts following the payment of Friedeberg's fees and costs and various trust-related expenses. Consistent with the March 2019 order, the court awarded Padlan attorney fees of "up to $25,000," denied Graves trustee fees, and required her to "bear the full cost of the fees awarded" to Friedeberg. The court declined to "revisit" the March 2019 order.[2]

A few days later, Graves filed a notice of appeal from a "judgment or order . . . entered on December 20, 2019."

## DISCUSSION

### A. Our Jurisdiction is Limited to the Order Identified in the Notice of Appeal

Graves devotes a significant portion of her brief to attacking the March 2019 order. For example, Graves contends the court erred by "rubber-stamping" Padlan's attorney fee request. She also claims the court violated the Probate Code by ordering her to bear the cost of legal fees she incurred, and by denying her request for trustee fees. We lack jurisdiction to consider Graves's challenge to the March 2019 order.

The notice of appeal "defines the scope of the appeal by identifying the particular judgment or order being appealed." (*Morton v. Wagner* (2007)

---

[2] That same day, the court issued an order for withdrawal of funds from the blocked account (Judicial Council form MC–358) and an order for payment of Friedeberg's attorney fees and costs in the amount of $17,452.30.

156 Cal.App.4th 963, 967.) " ' "[W]here several . . . orders occurring close in time are separately appealable . . . each appealable . . . order must be expressly specified—in either a single notice of appeal or multiple notices of appeal—in order to be reviewable." ' " (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 239.) " ' "Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from." [Citation.] We have no jurisdiction over an order not mentioned in the notice of appeal.' " (*In re J.F.* (2019) 39 Cal.App.5th 70, 75.)

Here, the notice of appeal states Graves is appealing from a "judgment or order . . . entered on . . . December 20, 2019." The March 2019 order is not " ' "expressly specified" ' " in the notice of appeal. (*Sole Energy Co. v. Petrominerals Corp.*, *supra*, 128 Cal.App.4th at p. 239.) As a result, that order is outside the scope of this appeal and we have no jurisdiction to review it. (*In re J.F.*, *supra*, 39 Cal.App.5th at p. 76 [policy of liberally construing a notice of appeal in favor of its sufficiency " 'does not apply if the notice is so specific it cannot be read as reaching a judgment or order not mentioned at all' "].)

Even if we were to construe the notice of appeal to encompass the March 2019 order, the appeal from that order would be untimely. The March 2019 order was immediately appealable under section 1300, which authorizes an appeal from an order "[f]ixing, authorizing, allowing, or directing payment of compensation or expenses of an attorney," as well as from an order "[f]ixing, directing, authorizing, or allowing payment of the compensation or expenses of a fiduciary." (*Id.*, subds. (e), (f).) Section 1300 also makes appealable an order "[s]urcharging . . . a fiduciary." (*Id.*, subd. (g).)

Once an " 'appealable order . . . has been entered, the time to appeal begins to run.' " (*Estate of Reed* (2017) 16 Cal.App.5th 1122, 1127.) Here, the

6

60-day deadline to appeal began to run on March 14, 2019, when the court filed and served the order. (Cal. Rules of Court, rule 8.104(a)(1)(A).) Graves filed her notice of appeal in December, well beyond the 60-day deadline. The references in the December 2019 order declining to "revisit" the March 2019 order did not restart the time to appeal. (*Estate of Reed*, at p. 1127.) Because no timely appeal was taken from the March 2019 order, "it became final and unassailable." (*Estate of Redfield* (2011) 193 Cal.App.4th 1526, 1534–1535; *Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 56 [once the deadline to appeal expires, "the appellate court has no power to entertain the appeal"].)

## B. Graves's Remaining Arguments Have No Merit

Graves challenges the December 2019 order, including the court's refusal to "revisit" the March 2019 order, and the accompanying order on Friedeberg's attorney fee petition. Graves contends the court abused its discretion by ordering her to pay attorney fees and costs from her share of the estate because Friedeberg committed "attorney misconduct." This argument fails. The predicate for the attorney fee award—the March 2019 order requiring Graves to bear the cost of the attorney fees she incurred—became "final and unassailable" after Graves failed to timely appeal that order. (*Estate of Redfield, supra*, 193 Cal.App.4th at pp. 1534–1535.) Graves cannot litigate the March 2019 order in this appeal. (*Ibid*.) Nor did the court abuse its discretion by refusing to revisit that order. (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1108 ["court need not rule on any suggestion that it should reconsider a previous ruling"]; *People v. Goodwillie* (2007)

7

147 Cal.App.4th 695, 713 ["one superior court judge may not reconsider the previous ruling of another superior court judge"].)

Thus, the only issue before us is the amount of the fee award.[3] It is a well-settled principle of appellate review that the trial court's judgment or order is presumed correct. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) The appellant has the burden "to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Id.* at p. 609.) This principle extends to attorney fee awards: "[w]e presume an attorney fee award is correct unless the appellant demonstrates the trial court abused its discretion." (*Taylor v. County of Los Angeles* (2020) 50 Cal.App.5th 205, 209.) A court abuses its discretion if its ruling is " 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)

Graves has not satisfied her burden to establish the court abused its discretion. There is no reporter's transcript of the hearing on Friedeberg's attorney fee petition. Without it, Graves cannot establish the court declined to weigh the evidence or failed to exercise its discretion as to the amount of the fees. (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992.) "[E]rrors not reflected in the trial record . . . cannot . . . sustain a reversal on appeal." (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 557.) Nor has Graves offered any credible evidence of supposed misconduct committed by Friedeberg. On this record, Graves has not—and cannot— establish an abuse of discretion. Graves's remaining arguments regarding the attorney fee award have been considered and merit no further discussion.

---

[3] Graves's challenges to the other portions of the December 2019 order are all predicated on her challenges to the March 2019 order.

(*Lyons v. Santa Barbara County Sheriff's Office* (2014) 231 Cal.App.4th 1499, 1506.)

At several points in her brief, Graves accuses one of the trial court judges involved in the case of harboring bias against her.  This assertion— which is unsupported by argument, authority, or citation to the record—is forfeited.  (*Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114; *Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 377–378, fn. 3 [declining to consider " 'loose and disparate arguments that [were] not clearly set out in a heading and supported by reasoned legal argument' "].)

## DISPOSITION

The December 20, 2019 orders are affirmed.  No costs are awarded because Padlan has not made an appearance.  (Cal. Rules of Court, rule 8.278(a)(5).)

_____

Chou, J.*

WE CONCUR:


_____

Fujisaki, Acting P. J.


_____

Petrou, J.


A159576


_____

&ast; Judge of the Superior Court of San Mateo County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10